# UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF WISCONSIN
# MILWAUKEE DIVISION

| | |
|---|---|
| DUANE LINDENBACH, LINDA LOPEZ and MARLENE KANEHL Individually and on Behalf of All Others Similarly Situated,<br><br>        Plaintiffs,<br>vs.<br><br>THE CBE GROUP, INC.,<br><br>        Defendant. | Case No.: 17-cv-1336<br><br>**CLASS ACTION COMPLAINT**<br><br>**Jury Trial Demanded** |

## INTRODUCTION

1. This class action seeks redress for collection practices that violate the Fair Debt Collection Practices Act, 15 U.S.C. § 1692 *et seq.* (the "FDCPA").

## JURISDICTION AND VENUE

2. The court has jurisdiction to grant the relief sought by the Plaintiff pursuant to 15 U.S.C. § 1692k and 28 U.S.C. §§ 1331 and 1337. Venue in this District is proper in that Defendant directed its collection efforts into the District.

## PARTIES

3. Plaintiff Duane Lindenbach is an individual who resides in the Eastern District of Wisconsin (Milwaukee County).

4. Plaintiff Linda Lopez is an individual who resides in the Eastern District of Wisconsin (Milwaukee County).

5. Plaintiff Marlene Kanehl is an individual who resides in the Eastern District of Wisconsin (Milwaukee County).

6. Each Plaintiff is a "consumer" as defined in the FDCPA, 15 U.S.C. § 1692a(3), in that Defendant sought to collect from them a debt allegedly incurred for personal, family or household purposes.

7. Defendant The CBE Group, Inc. ("CBE") is a foreign corporation with its principal place of business located at 1309 Technology Parkway Cedar Falls, IA 50613.

8. CBE is engaged in the business of a collection agency, using the mails and telephone to collect consumer debts originally owed to others.

9. CBE is engaged in the business of collecting debts owed to others and incurred for personal, family or household purposes. CBE is a debt collector as defined in 15 U.S.C. § 1692a.

## FACTS

### THE FAIR DEBT COLLECTION PRACTICES ACT, 15 U.S.C. § 1692 ET SEQ.

10. The FDCPA states that its purpose, in part, is "to eliminate abusive debt collection practices by debt collectors." 15 U.S.C. § 1692(e). It is designed to protect consumers from unscrupulous collectors, whether or not there is a valid debt. *Mace v. Van Ru Credit Corp.,* 109 F.3d 338 (7th Cir. 1997); *Baker v. G.C. Services Corp.,* 677 F.2d 775, 777 (9th Cir. 1982); *McCartney v. First City Bank,* 970 F.2d 45, 47 (5th Cir. 1992). The FDCPA broadly prohibits unfair or unconscionable collection methods; conduct which harasses, oppresses or abuses any debtor; and any false, deceptive or misleading statements in connection with the collection of a debt; it also requires debt collectors to give debtors certain information. 15 U.S.C. §§ 1692d, 1692e, 1692f and 1692g.

11. The Seventh Circuit has held that whether a debt collector's conduct violates the FDCPA should be judged from the standpoint of an "unsophisticated consumer." *Avila v. Rubin,* 84 F.3d 222, 227 (7th Cir. 1996); *Gammon v. GC Services, LP,* 27 F.3d 1254, 1257 (7th Cir. 1994). The standard is an objective one—whether the plaintiffs or any class members were misled is not an element of a cause of action. *Bartlett v. Heibl,* 128 F.3d 497, 499 (7th Cir.

2

1997). "The question is not whether these plaintiffs were deceived or misled, but rather whether an unsophisticated consumer would have been misled." *Beattie v. D.M. Collections Inc.,* 754 F. Supp. 383, 392 (D. Del. 1991).

12. Because it is part of the Consumer Credit Protection Act, 15 U.S.C. §§ 1601 *et seq.*, the FDCPA should be liberally construed in favor of the consumer to effectuate its purposes. *Cirkot v. Diversified Fin. Services, Inc.,* 839 F. Supp. 941, 944 (D. Conn. 1993).

> The [Consumer Credit Protection] Act is remedial in nature, designed to remedy what Congressional hearings revealed to be unscrupulous and predatory creditor practices throughout the nation. Since the statute is remedial in nature, its terms must be construed in liberal fashion if the underlying Congressional purpose is to be effectuated.

*N.C. Freed Co. v. Board of Governors,* 473 F.2d 1210, 1214 (2d Cir. 1973).

13. Statutory damages are recoverable for violations, whether or not the consumer proves actual damages. *Baker,* 677 F.2d at 780-1; *Woolfolk v. Van Ru Credit Corp.,* 783 F. Supp. 724, 727 and n. 3 (D. Conn. 1990); *Riveria v. MAB Collections, Inc.,* 682 F. Supp. 174, 177 (W.D.N.Y. 1988); *Kuhn v. Account Control Tech.*, 865 F. Supp. 1443, 1450 (D. Nev. 1994); *In re Scrimpsher*, 17 B.R. 999, 1016-7 (Bankr. N.D.N.Y. 1982); *In re Littles,* 90 B.R. 669, 680 (Bankr. E.D. Pa. 1988), *aff'd as modified sub nom. Crossley v. Lieberman,* 90 B.R. 682 (E.D. Pa. 1988), *aff'd*, 868 F.2d 566 (3d Cir. 1989).

14. The FDCPA creates substantive rights for consumers; violations cause injury to consumers, and such injuries are concrete and particularized. *Bock v. Pressler & Pressler, LLP*, No. 11-7593, 2017 U.S. Dist. LEXIS 81058 *21 (D.N.J. May 25, 2017) ("through [s]ection 1692e of the FDCPA, Congress established 'an enforceable right to truthful information concerning' debt collection practices, a decision that 'was undoubtedly influenced by congressional awareness that the intentional provision of misinformation' related to such practices, 'contribute[s] to the number of personal bankruptcies, to marital instability, to the loss

of jobs, and to invasions of individual privacy,"); *Quinn v. Specialized Loan Servicing, LLC*, No. 16 C 2021, 2016 U.S. Dist. LEXIS 107299 *8-13 (N.D. Ill. Aug. 11, 2016) (rejecting challenge to Plaintiff's standing based upon alleged FDCPA statutory violation); *Lane v. Bayview Loan Servicing, LLC*, No. 15 C 10446, 2016 U.S. Dist. LEXIS 89258 *9-10 (N.D. Ill. July 11, 2016) ("When a federal statute is violated, and especially when Congress has created a cause of action for its violation, by definition Congress has created a legally protected interest that it deems important enough for a lawsuit."); *Church v. Accretive Health, Inc.*, No. 15-15708, 2016 U.S. App. LEXIS 12414 *7-11 (11th Cir. July 6, 2016) (same); *see also Mogg v. Jacobs*, No. 15-CV-1142-JPG-DGW, 2016 U.S. Dist. LEXIS 33229, 2016 WL 1029396, at *5 (S.D. Ill. Mar. 15, 2016) ("Congress does have the power to enact statutes creating legal rights, the invasion of which creates standing, even though no injury would exist without the statute," (quoting *Sterk v. Redbox Automated Retail, LLC*, 770 F.3d 618, 623 (7th Cir. 2014)). For this reason, and to encourage consumers to bring FDCPA actions, Congress authorized an award of statutory damages for violations. 15 U.S.C. § 1692k(a).

15. Moreover, Congress has explicitly described the FDCPA as regulating "abusive practices" in debt collection. 15 U.S.C. §§ 1692(a) – 1692(e). Any person who receives a debt collection letter containing a violation of the FDCPA is a victim of abusive practices. *See* 15 U.S.C. §§ 1692(e) ("It is the purpose of this subchapter to eliminate abusive debt collection practices by debt collectors, to insure that those debt collectors who refrain from using abusive debt collection practices are not competitively disadvantaged, and to promote consistent State action to protect consumers against debt collection abuses").

16. The FDCPA prohibits debt collectors from contacting third parties and disclosing the existence of a debt. 15 U.S.C. § 1692c(b) states:

4

> Except as provided in section 1692b of this title, without the prior consent of the consumer given directly to the debt collector, or the express permission of a court of competent jurisdiction, or as reasonably necessary to effectuate a postjudgment judicial remedy, a debt collector may not communicate, in connection with the collection of any debt, with any person other than the consumer, his attorney, a consumer reporting agency if otherwise permitted by law, the creditor, the attorney of the creditor, or the attorney of the debt collector.

17. 15 U.S.C. § 1692b allows a debt collector to communicate with third parties for the purpose of determining the consumer's location or employment. However, the debt collector must "not state that such consumer owes any debt." 15 U.S.C. § 1692b(2).

18. The FDCPA prohibits "any false, deceptive, or misleading representation or means in connection with the collection of any debt." 15 U.S.C. § 1692e.

19. 15 U.S.C. § 1692e(2)(a) specifically prohibits: "The false representation of — the character, amount, or legal status of any debt."

20. 15 U.S.C. § 1692e(5) specifically prohibits: "The threat to take any action that cannot legally be taken or that is not intended to be taken."

21. 15 U.S.C. § 1692e(10) specifically prohibits the "use of any false representation or deceptive means to collect or attempt to collect any debt."

22. 15 U.S.C. § 1692f generally prohibits a debt collector from using "unfair or unconscionable means to collect or attempt to collect any debt."

23. 15 U.S.C. § 1692f(1) specifically prohibits the "collection of any amount (including any interest, fee, charge, or expense incidental to the principal obligation) unless such amount is expressly authorized by the agreement creating the debt or permitted by law."

24. 15 U.S.C. § 1692g(a) states:

    a) **Notice of debt; contents**

> Within five days after the initial communication with a consumer in connection with the collection of any debt, a debt collector shall, unless the following information is contained in the initial communication or the consumer has paid the debt, send the consumer a written notice containing—
>
> (1) the amount of the debt
>
> (2) the name of the creditor to whom the debt is owed;
>
> (3) a statement that unless the consumer, within thirty days after receipt of the notice, disputes the validity of the debt, or any portion thereof, the debt will be assumed to be valid by the debt collector;
>
> (4) a statement that if the consumer notifies the debt collector in writing within the thirty-day period that the debt, or any portion thereof, is disputed, the debt collector will obtain verification of the debt or a copy of a judgment against the consumer and a copy of such verification or judgment will be mailed to the consumer by the debt collector; and
>
> (5) a statement that, upon the consumer's written request within the thirty-day period, the debt collector will provide the consumer with the name and address of the original creditor, if different from the current creditor.

### *Lindenbach Letter*

25. Plaintiff Duane Lindenbach entered into a consumer transaction with Wheaton Franciscan Healthcare ("WFH") for personal medical services. The alleged debt was thus incurred for personal, family or household purposes.

26. On or about October 12, 2016 CBE mailed a debt collection letter to Plaintiff regarding a debt, allegedly owed to WFH. A copy of this letter is attached to this complaint as Exhibit A.

27. Upon information and belief, Exhibit A is a form letter, generated by computer, and with the information specific to Plaintiff inserted by computer.

28. Upon information and belief, Exhibit A is a form debt collection letter used by CBE to attempt to collect alleged debts.

29. Upon information and belief, <u>Exhibit A</u> is the first written communication that CBE sent to Plaintiff regarding the alleged debt to which <u>Exhibit A</u> refers.

30. <u>Exhibit A</u> contains the following text:

> Unless you notify this office within thirty (30) days after receiving this notice that you dispute the validity of this debt or any portion thereof, this office will assume this debt is valid. If you notify this office in writing within thirty (30) days after receiving this notice, that you dispute the validity of this debt or any portion thereof, this office will obtain verification of the debt or obtain a copy of a judgment and mail you a copy of such judgment or verification. If you request this office in writing within thirty (30) days after receiving this notice, this office will provide you with the name and address of the original creditor if different from the current creditor. This is an attempt to collect a debt; any information obtained will be used for that purpose. This communication is from a debt collector.

31. The above language in <u>Exhibit A</u> is the debt validation notice that the FDCPA requires to be included with the initial written communication to the consumer. 15 U.S.C. § 1692g.

32. <u>Exhibit A</u> also contains the following statement:

> You now have the opportunity to pay this account in full or we may report the debt to one or more of the three national credit bureaus after the fortieth (40th) day from the date of this letter.

33. Plaintiff, thus, has forty days from the date of <u>Exhibit A</u> to pay the allegedly overdue account or face being reported to the "three national credit bureaus." (<u>Exhibit A</u>).

34. If <u>Exhibit A</u> was actually mailed on October 12, 2016, the 30 day validation period identified in <u>Exhibit A</u> would end only a few days before Plaintiff's account would potentially be reported to the three national credit reporting bureaus if Plaintiff does not "pay this account in full" to CBE. *See* 15 U.S.C. § 1692g(a).

### *Lopez Letters*

35. Plaintiff Linda Lopez entered into a number of consumer transactions with Wheaton Franciscan Healthcare ("WFH") for personal medical services. The alleged debts were thus incurred for personal, family or household purposes.

7

36. On or about October 28, 2016, CBE mailed four debt collection letters to Plaintiff regarding a debt, allegedly owed to WFH. Copies of these letters are attached to this complaint as Exhibits B-E.

37. On or about November 30, 2016, CBE mailed another debt collection letter to Plaintiff regarding an additional debt, allegedly owed to WFH. A copy of this letter is attached to this complaint as Exhibit F.

38. Upon information and belief, Exhibits B-F are form letters, generated by computer, and with the information specific to Plaintiff inserted by computer.

39. Upon information and belief, Exhibits B-F are form debt collection letters used by CBE to attempt to collect alleged debts.

40. Upon information and belief, Exhibits B-F are the first written communications that CBE sent to Plaintiff regarding the alleged debts to which Exhibits B-F refer.

41. Exhibits B-F contain the following text:

> Unless you notify this office within thirty (30) days after receiving this notice that you dispute the validity of this debt or any portion thereof, this office will assume this debt is valid. If you notify this office in writing within thirty (30) days after receiving this notice, that you dispute the validity of this debt or any portion thereof, this office will obtain verification of the debt or obtain a copy of a judgment and mail you a copy of such judgment or verification. If you request this office in writing within thirty (30) days after receiving this notice, this office will provide you with the name and address of the original creditor if different from the current creditor. This is an attempt to collect a debt; any information obtained will be used for that purpose. This communication is from a debt collector.

42. The above language in Exhibits B-F is the debt validation notice that the FDCPA requires to be included with the initial written communication to the consumer. 15 U.S.C. § 1692g.

43. Exhibits B-F also contain the following statement:

> You now have the opportunity to pay this account in full or we may report the debt to one or more of the three national credit bureaus after the fortieth (40th) day from the date of this letter.

44. Plaintiff, thus, has forty days from the date of Exhibits B-F to pay the allegedly overdue account or face being reported to the "three national credit bureaus."

8

45.     If Exhibits B-E were actually mailed on October 28, 2016, the 30 day validation period identified in Exhibits B-E would end only a few days before Plaintiff's account would be potentially be reported to the three national credit reporting bureaus if Plaintiff does not "pay this account in full" to CBE. *See* 15 U.S.C. § 1692g(a).

46.     Likewise, if Exhibit F were actually mailed on November 30, 2016, the 30 day validation period identified in Exhibit F would end only a few days before Plaintiff's account would be potentially be reported to the three national credit reporting bureaus if Plaintiff does not "pay this account in full" to CBE. See 15 U.S.C. § 1692g(a).

47.     Exhibits A-F are confusing to the unsophisticated consumer because the letter demands a payment within the validation period or shortly thereafter, but does not explain how the validation notice and payment "deadline" fit together. *Bartlett v. Heibl*, 128 F.3d 497, 500 (7th Cir. 1997) ("In the typical case, the letter both demands payment within thirty days and explains the consumer's right to demand verification within thirty days. These rights are not inconsistent, but by failing to explain how they fit together the letter confuses.").

48.     The consumer needs time to process the information contained in an initial debt collection letter before deciding whether to dispute, pay or take other action. This is the point of the 30 day period in 15 U.S.C. 1692g(a).

49.     Prior to deciding whether to dispute a debt, a consumer may have to sort through personal records and/or memories to try to remember if the debt might be legitimate. She may not recognize the creditor – debts are freely assignable and corporations, especially banks, often change names.

50.     Moreover, once a consumer sends a dispute in writing, the creditor is under no obligation to provide verification in any specific amount of time, or even to provide verification

9

at all, so long as the debt collector ceases collection efforts until it does so. *Jang v. A.M. Miller & Assocs.*, 122 F.3d 480, 483 (7th Cir. 1997) ("Section 1692g(b) thus gives debt collectors two options when they receive requests for validation. They may provide the requested validations and continue their debt collecting activities, or they may cease all collection activities.")

51. The § 1692g validation period lasts for 30 days. It is the consumer's right to *request* verification until the end of the thirty day period. If the request is not made until the end of the thirty day period, the verification request would not be processed, researched by the creditor, and returned to the consumer until long after the deadline to report the debt to CRAs unless the consumer "pay[s] the account in full" has expired.

52. The unsophisticated consumer would have no idea how to both seek verification of the debt and avoid being reported to the three national credit bureaus. It is likely that the forty day deadline to pay before reporting would expire before the debt collector provides verification. The consumer would be left with little or no time to review the verification and determine whether the debt is legitimate and actually theirs before paying CBE. Thus, the effect of the credit bureau reporting threat is to discourage or prevent consumers from exercising their validation rights.

53. The Seventh Circuit has established "safe harbor" language regarding apparent conflicts between validation rights and demands for payment in collection letters. *Bartlett*, 128 F.3d 497, 501-02 (7th Cir. 1997).

54. Defendant did not use the safe harbor language in Exhibits A-G, or any equivalent or similar language.

## *Kanehl Letter*

55.     Plaintiff Marlene Kanehl entered into one or more consumer transactions with Time Warner Cable ("TWC") for personal cable television services. The alleged debt was thus incurred for personal, family or household purposes.

56.     On or about August 28, 2017, CBE mailed a debt collection letter to Plaintiff regarding an alleged debt, allegedly owed to TWC. A copy of this letter is attached to this complaint as Exhibit G.

57.     Upon information and belief, Exhibit G is a form letter, generated by computer, and with the information specific to Plaintiff inserted by computer.

58.     Upon information and belief, Exhibit G is a form debt collection letter used by PRA to attempt to collect alleged debts.

59.     Exhibit G states:

**Total Amount Due: $224.15**

60.     Exhibit G also states that the "outstanding balance" of the account is "$224.15."

61.     Exhibit G then includes four payment "coupons" in the following form:



11

62. Each of the four payment coupons stated: "PLEASE PAY THIS AMOUNT: **$56.04**." (bold in original).

63. The total amount of four payments of $56.04 exceeds the "Total Amount Due" of $224.15.

64. Exhibit G misstates the amount CBE is collecting and attempts to collect amounts not owed to the creditor. 15 U.S.C. §§ 1692e(2)(a), 1692f(1).

65. Plaintiffs were confused by Exhibits A-G.

66. Plaintiffs had to spend time and money investigating Exhibits A-G and the consequences of any potential responses to Exhibits A-G.

67. Plaintiffs had to take time to obtain and meet with counsel, including travel to counsel's office by car and its related expenses (including but not limited to the cost of gasoline and mileage), to advise Plaintiffs on the consequences of Exhibits A-G.

## COUNT I – FDCPA

68. Plaintiffs incorporate by reference as if fully set forth herein the allegations contained in the preceding paragraphs of this Complaint.

69. The statement on Exhibits A-F that Plaintiffs can avoid being reported to the three national credit bureaus only if Plaintiffs pay within ten days of the validation period ending conflicts with and overshadows the debt validation notice, in that it demands a payment within the validation period or shortly thereafter, but does not explain how the validation notice and settlement "deadline" fit together. 15 U.S.C. § 1692g; *Bartlett*, 128 F.3d at 500.

70. Exhibits A-F are confusing, deceptive, and/or misleading to the unsophisticated consumer.

71. 15 U.S.C. § 1692g(b) states, in part:

> (b) **Disputed debts**
>
> …
>
> Any collection activities and communication during the 30-day period may not overshadow or be inconsistent with the disclosure of the consumer's right to dispute the debt or request the name and address of the original creditor.

72. 15 U.S.C. § 1692e provides, in relevant part: "A debt collector may not use any false, deceptive, or misleading representation or means in connection with the collection of any debt."

73. 15 U.S.C. § 1692e(10) prohibits: "The use of any false representation or deceptive means to collect or attempt to collect any debt or to obtain information concerning a consumer.

74. Defendant violated 15 U.S.C. §§ 1692e, 1692e(10) and 1692g.

## COUNT II – FDCPA

75. Plaintiffs incorporate by reference as if fully set forth herein the allegations contained in the preceding paragraphs of this Complaint.

76. Count II is brought on behalf of Plaintiff Kanehl.

77. The four payment coupons on Exhibit G collectively sought to collect an amount greater than the actual balance owed on Kanehl's TWC account.

78. Exhibit G misrepresented the amount of the debt and sought to collect amounts to which neither CBE nor TWC was entitled.

79. Defendant violated 15 U.S.C. §§ 1692e, 1692e(2)(a), 1692e(10), 1692f and 1692f(1).

## CLASS ALLEGATIONS

80. Plaintiffs bring this action on behalf of two Classes.

81. Class 1 consists of (a) all natural persons in the State of Wisconsin (b) who were sent an initial debt collection letter in the form represented by Exhibits A-F to the complaint in

13

Case 2:17-cv-01336-WED   Filed 09/29/17   Page 13 of 15   Document 1

this action, (c) seeking to collect a debt incurred for personal, family or household purposes, (d) between September 29, 2016 and September 29, 2017, inclusive, (e) that was not returned by the postal service. Plaintiffs Lindenbach and Lopez are the designated representatives for Class 1.

82.     Class 2 consists of (a) all natural persons in the State of Wisconsin (b) who were sent a debt collection letter in the form represented by Exhibit G to the complaint in this action, (c) in which the sum of the amounts on the payment coupons, designated as "PLEASE PAY THIS AMOUNT," added up to greater than the "Total Amount Due" and/or "outstanding balance," (d) seeking to collect a debt incurred for personal, family or household purposes, (e) between September 29, 2016 and September 29, 2017, inclusive, (f) that was not returned by the postal service. Plaintiff Kanehl is the designated representatives for Class 2.

83.     The Class is so numerous that joinder is impracticable. On information and belief, there are more than 50 members of the Class.

84.     There are questions of law and fact common to the members of the class, which common questions predominate over any questions that affect only individual class members. The predominant common question is whether the Defendant complied with 15 U.S.C. § 1692e, 1692e(2)(a), 1692e(10), 1692f, 1692f(1) and/or 1692g.

85.     Plaintiffs' claims are typical of the claims of the Class members. All are based on the same factual and legal theories.

86.     Plaintiffs will fairly and adequately represent the interests of the Class members. Plaintiffs have retained counsel experienced in consumer credit and debt collection abuse cases.

87.     A class action is superior to other alternative methods of adjudicating this dispute. Individual cases are not economically feasible.

## JURY DEMAND

88. Plaintiffs hereby demand a trial by jury.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs request that the Court enter judgment in favor of Plaintiffs and the Class and against Defendant for:

(a) actual damages;

(b) statutory damages;

(c) attorneys' fees, litigation expenses and costs of suit; and

(d) such other or further relief as the Court deems proper.

Dated: September 29, 2017

                            **ADEMI & O'REILLY, LLP**

By: /S/ John D. Blythin
Shpetim Ademi (SBN 1026973)
John D. Blythin (SBN 1046105)
Mark A. Eldridge (SBN 1089944)
Jesse Fruchter (SBN 1097673)
3620 East Layton Avenue
Cudahy, WI 53110
(414) 482-8000
(414) 482-8001 (fax)
sademi@ademilaw.com
jblythin@ademilaw.com
meldridge@ademilaw.com
jfruchter@ademilaw.com